IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CAITANYA A. CHAMPION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-22-00012-JD |
| | ) |
| OFFICER GREG McCALISTER, | ) |
| WADE GOURLEY, Police Chief, | ) |
| Oklahoma City Police Department, and | ) |
| OKLAHOMA CITY POLICE | ) |
| DEPARTMENT, | ) |
| | ) |
| Defendants. | ) |

# **ORDER**

Before the Court is Defendant Officer Greg McCalister's Motion to Dismiss ("Motion") [Doc. No. 10].[1] Plaintiff Caitanya Champion filed a response in opposition ("Response") [Doc. No. 14], and Officer McCalister filed a reply [Doc. No. 17]. Officer McCalister seeks dismissal of Mr. Champion's Amended Complaint ("Am. Compl.") [Doc. No. 5] under Federal Rule of Civil Procedure 12(b)(6), asserting that Mr. Champion has failed to state a claim against Officer McCalister upon which relief may be granted.[2] Based on the parties' submissions, and under the applicable law, the Court

---

[1] The Court uses ECF page numbering in this Order.

[2] Attached as Exhibit 1 to the Motion is a record of Mr. Champion's convictions in Oklahoma City Municipal Court for a seatbelt violation, illegal tag display, and attempting to elude a police officer. [Doc. No. 10-1]. In ruling on a motion to dismiss, the Court may consider documents that the complaint incorporates by reference, documents referred to in the complaint that are central to the plaintiff's claims and as to which the parties do not dispute authenticity, and matters of which the Court may take judicial notice. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). The Court exercises

GRANTS the Motion. Considering this written order, the Court STRIKES the hearing set for September 21, 2023 [Doc. No. 21].

I.    **BACKGROUND**

Mr. Champion brings this 42 U.S.C. § 1983 civil rights action against Oklahoma City Police Department ("OCPD") and Officer Greg McCalister and OCPD Police Chief Wade Gourley, both in their official capacities. This case arises from a May 7, 2021 traffic stop of Mr. Champion by Officer McCalister for Mr. Champion's failure to wear a seatbelt. Mr. Champion asserts that his constitutional rights were violated as a result of the traffic stop and his subsequent arrest and impoundment of his vehicle. Specifically, Mr. Champion asserts that he was deprived of the following constitutional rights: (1) the right to travel under the Fifth and Fourteenth Amendments; (2) the right to keep and bear arms under the Second Amendment; (3) the right to liberty under the Fifth and Fourteenth Amendments; (4) the right to property under the Fifth and Fourteenth Amendments; (5) the right to be free from unreasonable searches and seizures under the Fourth Amendment; and (6) the right to be free from an unlawful arrest under the Fourth Amendment.

---

its discretion to take judicial notice of these publicly filed records at Exhibit 1 for purposes of this Motion. *See* City of Okla. City Mun. Ct. Online R. Search Site, https://www.municipalrecordsearch.com/oklahomacityok/Cases; *see also United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (explaining the court may take judicial notice of publicly filed records from other courts concerning matters that bear directly upon the disposition of the case at hand).

Construing the allegations in the Amended Complaint in the light most favorable to Mr. Champion, and taking all well-pleaded allegations as true,[3] Mr. Champion was driving his vehicle near the 2500 block of Northwest 23rd Street in Oklahoma City on May 7, 2021. Am. Compl. [Doc. No. 5] at 4–5. Officer McCalister pulled Mr. Champion over and stated that he had stopped him because Mr. Champion was not wearing a seatbelt. *Id.* Officer McCalister asked Mr. Champion for his driver's license, and Mr. Champion responded that he "was exercising his constitutional right to travel freely." *Id.*

Officer McCalister advised Mr. Champion that if he could not produce a valid driver's license, he would be arrested, and his vehicle impounded. *Id.* Mr. Champion then proceeded to drive away. *Id.* at 5. Officer McCalister pursued him and "called several dozen additional police officers to join in the pursuit." *Id.* This pursuit, according to Mr. Champion, led to OCPD officers "damaging [Mr. Champion's] vehicle and destroying [his] tires by using stop sticks to abrogate his right to travel." *Id.*

Mr. Champion was arrested and detained, and his vehicle was impounded. *Id.* His "vehicle and person were searched without a warrant," and "two firearms were confiscated without a warrant." *Id.* Officer McCalister issued citations to Mr. Champion for the seatbelt violation, attempting to elude police, and illegal tag display. *See id.* Mr. Champion alleges that Officer McCalister, along with the "twenty or more additional" OCPD officers violated their constitutional oath of office by enforcing a city ordinance

---

[3] *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (explaining the court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff").

that "is contrary and repugnant" to the United States Constitution, thereby depriving Mr. Champion of his liberty and property. *See id.* at 5–6. Additionally, he asserts that the OCPD trains its officers "to enforce the vehicle code and the criminal code but does not provide [its] officers with adequate training" in constitutional law, civil liberty law, and applicable case law. *See id.* at 6. Finally, Mr. Champion alleges that the OCPD "has a long-standing habit of training its officers to enforce laws which are repugnant to the constitution." *See id.*

Mr. Champion seeks monetary damages and the removal of every officer involved and asks that the officers be fined, incarcerated, and removed from office for violating their oaths. *See id.* at 7. As a result of the officers' actions, Mr. Champion alleges he sustained several injuries, including the deprivation of his constitutional rights to travel, to keep and bear arms, to liberty, and to property; severe psychological trauma from "having guns drawn on him, being assaulted while in handcuffs, and pushed and shoved by arresting officers while being escorted to the county jail"; financial loss and loss of his employment by being deprived of his vehicle; denial of "life sustaining medication" because his vehicle was impounded; and that "[n]o medical attention was sought." *See id.*

## II.  STANDARD OF REVIEW

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need detailed factual assertions, a pleading that offers only "labels and conclusions" or "pleads facts that are merely consistent with a defendant's liability" will not suffice. *Id.* (internal quotation marks and citations omitted). The burden is on the plaintiff to plead factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Under this standard, the Court accepts all well-pleaded factual allegations as true and views the allegations in the light most favorable to the nonmoving party. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). Conclusory statements, however, are not entitled to the assumption of truth and courts are free to disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in his complaint, but the elements of each cause of action help to determine whether the plaintiff has set forth a plausible claim. *Id.* at 1192.

Mr. Champion is proceeding pro se; thus, the Court must construe his pleadings "liberally" and hold them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), and *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, the Court may not "assume the role of advocate for the pro se litigant." *Id.* If the Court can "reasonably read the pleadings to state a valid claim on which the plaintiff

5

could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.* Nonetheless, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Nor can the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).

## III. ANALYSIS

Mr. Champion has sued Officer McCalister in his official capacity. Am. Compl. [Doc. No. 5] at 2.[4] A plaintiff who brings a § 1983 action may sue a defendant in the defendant's individual capacity, official capacity, or both. When the plaintiff asserts an official capacity claim against a city employee, "the plaintiff essentially seeks to hold the city liable for the alleged constitutional violation under a theory of municipal liability." *Moman v. Barnhart*, 623 F. Supp. 3d 1215, 1228 (N.D. Okla. 2022) (citing *Porro v.*

---

[4] Although Mr. Champion in his response and Officer McCalister in his reply discuss the defense of qualified immunity, "[t]he defense of qualified immunity 'is available only in suits against officials sued in their personal capacities, not in suits against . . . officials sued in their official capacities.'" *See Cox v. Glanz*, 800 F.3d 1231, 1239 n.1 (10th Cir. 2015) (quoting *Starkey v. Boulder Cnty. Social Servs.*, 569 F.3d 1244, 1263 n.4 (10th Cir. 2009)); *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013). Here, Officer McCalister is sued only in his official capacity. Thus, it is not necessary for the Court to determine whether any constitutional right was clearly established at the time of Officer McCalister's actions. Regardless, the Court finds that Mr. Champion has not alleged sufficient facts to show that Officer McCalister violated his constitutional rights. *See* discussion *infra*.

*Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (explaining that a § 1983 suit against individual defendants in their official capacities is basically another way of pleading an action against the county or municipality they represent)). Thus, Mr. Champion's claims against Officer McCalister are essentially claims against the City of Oklahoma City ("the City").

A municipality, however, is not liable under § 1983 solely because its police officers inflict injury. *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). Rather, to establish municipal liability, a plaintiff must show: (1) that an officer committed an underlying constitutional violation; (2) that a municipal policy or custom exists; and (3) that there is a direct causal link between the policy or custom and the injury. *See id.* Mr. Champion's official capacity claims fail because he has not alleged sufficient facts to satisfy this requisite showing.

**A.     Mr. Champion has not alleged sufficient facts identifying a specific municipal policy.**

A municipal policy is a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). "When the claim is a failure to act, the plaintiff must demonstrate the municipality's inaction was the result of deliberate indifference to the rights of its inhabitants." *Graves*, 450 F.3d at 1218 (internal quotation marks and citation omitted). Additionally, the identified official policy must be "the moving force of the constitutional violation . . . ." *Monell*, 436 U.S. at 694.

Mr. Champion alleges that the OCPD does not provide its officers "with adequate training" in constitutional law, civil liberty law, and applicable case law, thereby producing "unqualified" police officers. Am. Compl. [Doc. No. 5] at 6. Additionally, he alleges that the OCPD "has a long-standing habit of training its officers to enforce laws which are repugnant to the constitution." *Id.* The laws Mr. Champion refers to as "repugnant to the constitution" are broadly alleged as "the vehicle code and the criminal code." *Id.*

Although a city ordinance can meet the requirement of an existing municipal policy, Mr. Champion does not identify which specific provision in the city code, or the Oklahoma Statutes, is the moving force behind the constitutional violation. The Court assumes that Mr. Champion is referring generally to the motor vehicle ordinances included in Oklahoma City's Municipal Code and Title 47 of the Oklahoma Statutes. "However, 'at the pleading stage, the existence of a *Monell* policy is a 'conclusion' to be built up to, rather than a 'fact' to be baldly asserted.'" *Erickson v. City of Lakewood, Colo.*, 489 F. Supp. 3d 1192, 1206 (D. Colo. 2020) (quoting *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1215 (D.N.M. 2015) (noting that "[a]t a minimum, a party asserting a *Monell* claim must plead sufficient facts to identify the unconstitutional custom or policy that was promulgated")). Mr. Champion fails to identify a specific municipal policy.

**B.     Mr. Champion has not alleged sufficient facts to support a finding of deliberate indifference on the part of the City.**

In addition to identifying the municipal policy at issue, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). Simply alleging that a municipality failed to train its officers is not enough to prove a constitutional violation. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 389–90 (1989). Rather, a plaintiff must state facts to show that the alleged failure to train amounted to "deliberate indifference to the rights of persons with whom the [untrained] police come into contact." *See id.* at 388; *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) (explaining that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train"). In other words, a municipality's failure to train must "reflect[] a 'deliberate' or 'conscious' choice" for it to be liable under § 1983. *Harris*, 489 U.S. at 389.

Even liberally construed, Mr. Champion does not allege facts to support a finding of deliberate indifference on the part of the City. Nor does he identify specific deficiencies in the City's training program that closely relate to his alleged injuries. *See id.* at 391. Mr. Champion has not set forth any facts concerning how Officer McCalister "was trained, who trained him, why his training was deficient, or how the incident could have been avoided with different training." *See Irizarry v. City and Cnty. of Denver*, --- F. Supp. 3d ----, Case No. 21-cv-01490-PAB-SKC, 2023 WL 2528782, at *12 (D. Colo.

Mar. 15, 2023) (collecting cases on what is required to state a failure-to-train claim). Rather, he stands on conclusory assertions, supported by his novel misunderstanding of constitutional law, that the OCPD trains its officers to enforce state and local laws that violate the Constitution. This will not do. *See id.*

**C.     Mr. Champion has not alleged sufficient facts to show an underlying constitutional violation by Officer McCalister.**

To state a claim for municipal liability, Mr. Champion must also allege sufficient facts to show that Officer McCalister committed a constitutional violation. Mr. Champion asserts that he was deprived of several constitutional rights. The Court addresses each below.

*1)     Right to Travel under the Fifth and Fourteenth Amendments*

Though the right to travel "'finds no explicit mention in the Constitution, . . . freedom to travel throughout the United States has long been recognized as a basic right under the Constitution.'" *Maehr v. United States Dep't of State*, 5 F.4th 1100, 1118 (10th Cir. 2021) (quoting *United States v. Guest*, 383 U.S. 745, 758 (1966)); *see also Kent v. Dulles*, 357 U.S. 116, 125 (1958) (explaining in dicta that the "right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment").

However, federal courts have "uniformly rejected" right to travel claims, like Mr. Champion's, in which plaintiffs have asserted they have a constitutional right to travel and are exempt from state licensing and registration requirements. *See, e.g.*, *Collins v. City of Wichita, Kan.*, Case No. 22-3135-SAC, 2022 WL 2791170, at *2 (D. Kan. July

10

15, 2022) (collecting cases); *Secor v. Oklahoma*, Case No. 16-CV-85-JED-PJC, 2016 WL 6156316, at *4–5 (N.D. Okla. Oct. 21, 2016) (emphasis in original) (noting that the plaintiff could not "confer rights upon himself simply because he may falsely *believe* that . . . he does not have to comply with generally applicable driver's license and tag laws"). Although the United States Supreme Court recognizes the freedom to travel as a basic constitutional right, this federal guarantee is limited to protecting interstate travelers from "the erection of actual barriers to interstate movement and being treated differently from intrastate travelers." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 277 (1993) (internal quotation marks and citation omitted); *see also Saenz v. Roe*, 526 U.S. 489, 500 (1999) (explaining that the right to travel includes three different components: the right of a citizen of one state to enter and leave another state; the right to be treated as a welcome visitor when temporarily present in another state; and the right to be treated the same as other citizens of that state after becoming a permanent resident); *Abdi v. Wray*, 942 F.3d 1019, 1029 (10th Cir. 2019) (explaining that the Supreme Court "has made clear" that the right to interstate travel is "not unlimited").

Additionally, the Supreme Court has held that states may constitutionally regulate the use of public roads by requiring licensed drivers and imposing other safety requirements. *See, e.g.*, *Delaware v. Prouse*, 440 U.S. 648, 658 (1979) (recognizing that the states "have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation, and . . . that licensing, registration, and vehicle inspection requirements are being observed"); *Reitz v. Mealey*, 314 U.S. 33, 36 (1941), *overruled on other grounds by*, *Perez v. Campbell*, 402

11

U.S. 637 (1971) (explaining that "[a]ny appropriate means adopted by the states to insure competence and care on the part of its licensees and to protect others using the highway is consonant with due process").

Mr. Champion alleges that Officer McCalister pulled him over and explained to Champion, he had stopped him because he was not wearing a seatbelt. Am. Compl. [Doc. No. 5] at 4–5. Officer McCalister asked Champion for his driver's license, to which Mr. Champion responded that he "was exercising his constitutional right to travel freely." *See id.* Officer McCalister advised Mr. Champion that if he could not produce a valid driver's license, he would be arrested, and his vehicle impounded. *See id.* Mr. Champion then proceeded to drive away, and Officer McCalister, along with "several dozen additional police officers" pursued him. *See id.* at 5. Mr. Champion, thus, does not dispute that he was not wearing his seatbelt or that he did not produce his driver's license when requested to do so but instead "proceeded to drive away." *See id.*

Even generously construed, Mr. Champion has failed to allege sufficient facts to show that Officer McCalister violated his constitutional right to travel.[5]

---

[5] To the extent he is attempting to do so, the Court finds that Mr. Champion has not stated a claim under § 1983 regarding access to "his life sustaining medication" or his allegation that "[n]o medical attention was sought." Am. Compl. [Doc. No. 5] at 7. Although pretrial detainees are entitled to certain protections when it comes to medical care, Mr. Champion fails to allege facts showing that the City was deliberately indifferent to his serious medical needs. *See Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 307–08 (10th Cir. 1985). Mr. Champion does not allege any gross deficiencies in the impound procedures or policies used by the officers, but rather cursorily alleges that he "was denied his life sustaining medication . . . when his vehicle was impounded." Am. Compl. [Doc. No. 5] at 7. Additionally, Mr. Champion does not allege that he told Officer McCalister that he had a serious medical condition, nor does he allege that he was outwardly displaying signs of the need for medical attention. In other words, he has not

> 2)   *Right to Keep and Bear Arms under the Second Amendment; the Right to Liberty and Property under the Fifth and Fourteenth Amendments; and the Right to be Free from Unreasonable Searches and Seizures and Unlawful Arrest under the Fourth Amendment*

Mr. Champion alleges that he was pursued by Officer McCalister and "several dozen additional police officers," and that this pursuit led to OCPD officers "damaging [Mr. Champion's] vehicle and destroying [his] tires by using stop sticks." Am. Compl. [Doc. No. 5] at 5. Mr. Champion asserts that following the pursuit, he was arrested and detained, and his vehicle was impounded. *See id.* His "vehicle and person were searched without a warrant," and "two firearms were confiscated." *See id.* As a result, Mr. Champion argues his Second Amendment right to keep and bear arms, his Fifth and Fourteenth Amendment rights to property and liberty, and his Fourth Amendment right to be free from unreasonable searches and seizures and unlawful arrest were violated.

The Second Amendment "confer[s] an individual right to keep and bear arms," but such right is "not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). The Supreme Court has explained that the Second Amendment "protect[s] the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense" and "an individual's right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022).

---

alleged facts that indicate that Officer McCalister or the City knew of and disregarded an excessive risk to Mr. Champion's health or safety. *See, e.g.*, *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (explaining what is required under the objective and subjective components of deliberate indifference).

Here, Mr. Champion's firearms were confiscated pursuant to an inventory search of his vehicle that was impounded following his arrest. Mr. Champion's claims, as framed in his Amended Complaint, are predicated on his arrest and impoundment of his vehicle being unlawful. If, however, Mr. Champion's arrest and the impoundment of his vehicle were lawful under the Fourth Amendment, his Second Amendment claim fails for the same reasons, as do his Fifth and Fourteenth Amendment claims that he was deprived of his rights to liberty and property.[6]

In *Atwater v. City of Lago Vista*, the Supreme Court concluded that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." 532 U.S. 318, 354 (2001); *see also Mocek v. City of Albuquerque*, 813 F.3d 912, 922 (10th Cir. 2015) (explaining that a warrantless arrest does not violate the Fourth Amendment when there is probable cause to believe the arrestee has committed a crime).

---

[6] Mr. Champion alleges in his Amended Complaint that he "was unlawfully detained and deprived of all his property which he kept in his vehicle" because of his arrest and impoundment of his vehicle. [Doc. No. 5 at 5]. If Champion is intending to plead a procedural due process violation under the Fourteenth Amendment, then his complaint must allege facts showing the lack of an adequate state remedy for the deprivation. *See Gee*, 627 F.3d at 1194 (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) and *Durre v. Dempsey*, 869 F.2d 543, 548 (10th Cir. 1989)). Mr. Champion does not allege that a tort action available under Oklahoma law would not provide an adequate remedy; thus, there is no constitutional deprivation of property without due process of law for purposes of the Fourteenth Amendment. *See Dalton v. City of Las Vegas*, 282 F. App'x 652, 654 (10th Cir. 2008) (unpublished) (citing *Parratt v. Taylor*, 451 U.S. 527, 543–44 (1981), *overruled on other grounds by*, *Daniels v. Williams*, 474 U.S. 327 (1986)). Additionally, there can be no Fifth Amendment due process claim against a municipality. *See Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013) (explaining that the Due Process Clause of the Fifth Amendment applies only to action by the federal government).

The traffic offense in *Atwater*, like the initial offense in this case, was failure to wear a seatbelt. *Atwater*, 532 U.S. at 323–24. Mr. Champion does not dispute that he was not wearing a seatbelt, nor does he dispute that this was the reason Officer McCalister effectuated the traffic stop. Rather, he generally asserts, without identifying which ones, that the city ordinances are unconstitutional. In Oklahoma, every driver and front-seat passenger must wear a seatbelt. *See* Okla. City Mun. Code § 32-532(a) (version Feb. 26, 2021); Okla. Stat. tit. 47, § 12-417(A)(1). Although Mr. Champion does not specifically challenge the constitutional validity of these two provisions, their validity is not "relevant to the probable cause determination." *Mocek*, 813 F.3d at 927–28 (explaining that "officers generally may presume that statutes are constitutional until declared otherwise"). Based on the allegations in the Amended Complaint, Officer McCalister had probable cause to believe that Mr. Champion was in violation of the seatbelt laws in Oklahoma.

When the driver of a car is arrested, the police must decide what to do with the car. *United States v. Woodward*, 5 F.4th 1148, 1150 (10th Cir. 2021). Leaving the car as it was can, at times, lead to theft or vandalism, which is why the United States Supreme Court has recognized that impoundment of the vehicle may be necessary for public safety. *Id.* (citing *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)); *see Opperman*, 428 U.S. at 368 (explaining that police frequently take automobiles into custody as part of "community caretaking functions").

When vehicles are impounded, the police generally must secure and inventory the vehicle's contents. *Opperman*, 428 U.S. at 369. The authority to impound a car and

inventory its contents, however, "is susceptible to abuse." *Woodward*, 5 F.4th at 1150. The police cannot impound a car simply as an excuse to search for evidence of a crime. *Id.*

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is "reasonableness."'" *Riley v. California*, 573 U.S. 373, 381–82 (2014) (citation omitted). And reasonableness generally requires a search warrant supported by probable cause and signed by a judge. *Id.* at 382; *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000). Absent a warrant, "a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley*, 573 U.S. at 382 (citing *Kentucky v. King*, 563 U.S. 452, 459 (2011)). One exception to the warrant requirement is a search conducted pursuant to a police officer's "community-caretaking" function. *See United States v. Braxton*, 61 F.4th 830, 833 (10th Cir. 2023). Impoundment and the community-caretaking exception has been a heavily litigated topic in the Tenth Circuit of late. For the most part, however, impoundment of a vehicle and a subsequent inventory search of its contents is constitutional so long as the police are guided by standardized criteria and the impoundment is justified by a reasonable, non-pretextual community-caretaking rationale. *See United States v. Sanders*, 796 F.3d 1241, 1248–49 (10th Cir. 2015).

Mr. Champion's Amended Complaint does not specify the location of his vehicle at the time of his arrest.[7] He does allege that his vehicle was "damag[ed]" and his tires "destroy[ed]" by the OCPD's use of "stop sticks." Am. Compl. [Doc. No. 5] at 5. In other words, his vehicle was inoperable regardless of its location; no one else was immediately present who could secure the vehicle, or have it towed; and Mr. Champion had been arrested and detained. The Tenth Circuit has stated that police are "not required to allow [a driver] to call someone to come pick up the [vehicle] and then, assuming [the driver is] successful, wait around for the new driver to arrive." *United States v. Trujillo*, 993 F.3d 859, 870 (10th Cir. 2021). Additionally, Mr. Champion alleges that his tires were "destroy[ed]." Am. Compl. [Doc. No. 5] at 5. Thus, the vehicle could not be lawfully driven on the roadway in its current state. *See* Okla. City Mun. Code § 32-514 (version Feb. 26, 2021) ("No vehicle . . . shall be driven . . . over any street or highway . . . when the tire thereon is flat or uninflated."); Okla. Stat. tit. 47, § 12-405. Moreover, Mr. Champion does not allege that the OCPD failed to follow standardized criteria in impounding the vehicle, that the impoundment was pretextual, or that the officers would be justified in leaving the vehicle with the two firearms inside in a parking lot accessible to the public. *See Sanders*, 796 F.3d at 1249; *see also Trujillo*, 993 F.3d at 864

---

[7] Mr. Champion asserts in his response brief that his "vehicle was in a public plaza and not on the streets," that it "was not a threat to traffic or public safety," and that he pulled into the Walmart parking lot on North May Avenue and parked his vehicle after the OCPD "used stop sticks to flatten his tires and damag[e] [his] vehicle." Response [Doc. No. 14] at 6. However, Mr. Champion cannot amend his Amended Complaint in his response brief. The Court on a Rule 12(b)(6) motion is limited to the facts alleged in the complaint. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

(explaining that "officers may take reasonable steps to protect the public by removing firearms . . . from unattended vehicles under their control in areas accessible to the public").

The Fourteenth Amendment provides that no person shall be deprived by the state of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The substantive component of the Due Process Clause "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels*, 474 U.S. at 331). "The 'ultimate' standard for determining whether there has been a substantive due process violation is 'whether the challenged government action shocks the conscience of federal judges.'" *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002) (internal quotation marks and citations omitted)). The Court "'must bear in mind three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety.'" *Graves*, 450 F.3d at 1220–21 (quoting *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995) (internal citations omitted)). The standard is not met by negligence. *See id.* at 1221. "In evaluating cases of police action, the Supreme Court has directed that [courts] consider whether the challenged conduct bears a 'reasonable justification in the service of a legitimate governmental objective' or if instead it might be 'characterized as

arbitrary, or conscience[-] shocking.'" *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 847 (1998)).

Here, Officer McCalister "confronted a not-unfamiliar scenario—'an unexplained flight from an attempted traffic stop.'" *Lindsey*, 918 F.3d at 1116 (quoting *Graves*, 450 F.3d at 1223). The allegations in Mr. Champion's Amended Complaint support a legitimate reason for his arrest, i.e., Mr. Champion driving without a seatbelt, refusing to produce his driver's license when requested, and his flight from police after Officer McCalister attempted to effectuate the traffic stop. He does not allege any conduct that shocks the conscience by Officer McCalister or the City. Nor does he allege that the impoundment and subsequent seizure of his firearms and property was contrary to city ordinance or standardized police criteria. Mr. Champion had been arrested and detained, and his vehicle was inoperable. Impoundment of his vehicle was logically the next step and not at all shocking.

Mr. Champion's allegations in the Amended Complaint do not support that his arrest was unlawful or that the subsequent impoundment of his vehicle and inventory search were contrary to the Fourth Amendment. Thus, given that his firearms were seized pursuant to a lawful arrest and impoundment of his vehicle, Mr. Champion has also failed to allege sufficient facts to support a Second Amendment violation. Nor has he alleged sufficient facts to support a violation under the Fifth and Fourteenth Amendments of his rights to liberty and property. As such, Mr. Champion has not alleged sufficient facts to

support any constitutional violation by Officer McCalister, and his official capacity claims fail.[8]

## IV.   CONCLUSION

The Court GRANTS Defendant Officer Greg McCalister's Motion to Dismiss [Doc. No. 10] and DISMISSES WITHOUT PREJUDICE Plaintiff Caitanya Champion's § 1983 official capacity claims against Officer McCalister. The Court will take up Mr. Champion's § 1983 official capacity claims against OCPD Police Chief Wade Gourley and the OCPD by separate order, as they are addressed by separate motion. *See* [Doc. No. 11].

IT IS SO ORDERED this 14th day of September 2023.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[8] In light of this analysis, the arguments raised by Officer McCalister regarding *Heck v. Humphrey*, 512 U.S. 477 (1994), do not determine the outcome of the Motion and need not be fully analyzed or decided by the Court. *See* Motion [Doc. No. 10] at 5–6. The Court notes, however, the *Heck* issues might present a slightly more complicated analysis than Officer McCalister suggests based on the court records submitted indicating Mr. Champion paid fines because of his municipal convictions, although Champion does allege he was detained at the county jail. *See* Citations [Doc. No. 10-1] at 3, 6, and 9; Am. Compl. [Doc. No. 5] at 5. *Cf. Klen v. City of Loveland, Colo.*, 661 F.3d 498, 516 (10th Cir. 2011) (quoting *Mays v. Dinwiddie*, 580 F.3d 1136, 1139 (10th Cir. 2009) (explaining that the payment of a fine, absent more, is not the type of significant liberty restraint contemplated by the custody requirement under federal habeas)). Nonetheless, the Court does not reach this issue, as it is unnecessary to do so.